THE PEOPLE OF THE STATE OF NEW YORK ex rel. WESSELL, NICKEL & GROSS, Respondent, *v.* CHARLES L. CRAIG, as Comptroller of the City of New York, Appellant.

First Department, February 10, 1922.

Taxation — city of New York — peremptory writ of mandamus to compel city comptroller to refund erroneous tax voluntarily paid by business corporation not proper remedy — Greater New York charter, § 897, does not provide for refund — only remedy is under Greater New York charter, § 246.

The property of the relator, a business corporation, in the city of New York was in 1919 erroneously assessed in excess of the correct amount. It neglected to make timely application for revision under section 898 of the Greater New York charter and the assessment was confirmed on February 1, 1920. Thereafter the relator obtained a writ of certiorari to review the assessment but this proceeding it discontinued. It paid the tax imposed by the erroneous assessment and thereafter presented a petition to the tax board pursuant to Greater New York charter, section 897, setting forth the facts of the erroneous assessment and asking for the proper reduction, but without disclosing that the excessive tax had been paid. Acting on this petition, the tax board reduced the assessment and its action was certified to the receiver of taxes who refused to refund the excess tax on the ground that it was paid voluntarily. Notice of claim and written demand for the payment was served on the comptroller, and thirty days having elapsed and he having refused to make the refund, a peremptory writ of mandamus was obtained directing that such refund be made.

*Held*, that the relator was not entitled to the writ as the tax board, the tax having been voluntarily paid, was without power to pass any resolution which would destroy the legal effect of such payment.

Greater New York charter, section 897, does not provide for a refund of taxes paid.

*It seems,* that any remedy the relator may have must be found in Greater New York charter, section 246.

APPEAL by the defendant, Charles L. Craig, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 23d day of July, 1921, granting relator's motion for a peremptory writ of mandamus commanding the comptroller of the city of New York to pay to relator the sum of $248, overpayment made for taxes for the year 1920 on lot 59, block 1055, section 4, on land map of borough of Manhattan, city of New York.

*John P. O'Brien, Corporation Counsel [William H. King* of counsel; *R. M. de Acosta* with him on the brief], for the appellant.

*James M. Vincent* of counsel [*Charles C. Sanders* with him on the brief], for the respondent.

DOWLING, J.:

The relator, a domestic corporation, having its principal place of business in the borough of Manhattan, city of New York, made a motion for the issuance of a peremptory writ of mandamus commanding the comptroller of the city of New York to pay to it the sum of $248, " the amount of overpayment made by them for the 1920 taxes on Lot 59, Block 1055, Section 4, premises 452–458 West 46th Street, Borough of Manhattan, City of New York." The petition set forth the following facts: Relator is a manufacturing and mercantile corporation as defined by article 9-a of the Tax Law of the State of New York. It owns the premises in question which on October 1, 1919, were assessed for the year 1920 at a value of: Land unimproved $47,000 and land with improvements thereon $105,000. The assessment was made up of erroneously and unlawfully included property exempt by law from local taxation, and was made up of the following items: Land, $47,000; building, $23,000; manufacturing machinery, $10,000; power plant, $25,000; total, $105,000.

Petitioner neglected to make an application within the

time fixed by section 898 of the Greater New York charter
(as amd. by Laws of 1911, chap. 455) for the revision and
cancellation of so much of the assessment as was erroneous.
The assessment was confirmed on February 1, 1920, by the
commissioners of taxes and assessments of the city of New
York at the amount of $47,000 for land unimproved and
$105,000 for land with improvements. A writ of certiorari
was thereafter obtained by relator, returnable October 4,
1920, to review the assessment, but the proceeding therefor
was discontinued by order dated May 6, 1921. On March
26, 1920, the assessment rolls were delivered to the receiver of
taxes for the collection of the tax of $2,604 for the year 1920
imposed on the relator's property, and on July 7, 1920, relator
paid the first half of the tax ($1,302) and on December 1, 1920,
it paid the remaining half thereof. Thereafter, on February
21, 1921, relator presented a petition, pursuant to section 897
of the charter (Laws of 1901, chap. 466, as amd.), to the tax
board, setting forth the fact that under the heading " Value of
land with improvements thereon " contained in the books of
annual record of assessed valuations of the borough of Man-
hattan for taxation in the year 1920, there was entered as the
total assessment upon the property in question an amount of
$105,000, which sum included not only the value of the land
and the building thereon, but also the value of the machinery,
equipment and apparatus contained in the building, which
under the decision in *People ex rel. General Chemical Co.* v.
*Cantor* (105 Misc. Rep. 62; affd., 188 App. Div. 959; 228 N. Y.
506) was and must be considered as, and held to be, personal
property exempt from local taxation as provided by the Tax
Law, and praying that the item of non-taxable machinery so
erroneously and unlawfully included in said assessment for
1920 be removed therefrom and that the taxes for that year
be remitted and reduced accordingly to that extent. A copy
of that petition is annexed to the petition in this proceeding,
and it did not disclose the fact that the entire tax had already
been paid before the filing of the petition. The prayer for
relief was " that the assessed valuation of the above-described
property for the year 1920 be remitted and reduced by your
honorable board as provided by sections 897 and 911 of the
Greater New York charter, and that the ' Value of the land

with the improvements thereon ' shall not include any items of machinery not specifically assessed as real estate machinery within the meaning and purpose of Chapter 726 of the Laws of 1917, and the amendments thereto as interpreted by the courts, and that such item of non-taxable machinery included therein for the purpose of taxation for the year 1920 be removed therefrom, and that the taxes for the year 1920 be remitted and reduced to that extent."

The tax board referred the petition to its chief deputy tax commissioner for the borough of Manhattan, who in turn referred the same to a deputy tax commissioner, who reported that the assessment did in fact contain an item of manufacturing machinery amounting to $10,000. Upon receiving this report, the tax board at a meeting held on March 16, 1921, remitted and reduced the assessment on relator's property by the amount of $10,000 by unanimous vote. This action was within the time required by section 897 of the Greater New York charter, as the books mentioned in the section had been delivered to the receiver of taxes of the borough of Manhattan on March 26, 1920, and the resolution was adopted within one year thereafter. Subsequently the secretary of the tax board certified the action of the board to the comptroller of the city of New York, who transmitted the same to the receiver of taxes, who refuses to pay the refund of $248, the taxes on the $10,000 assessment thus remitted and reduced, upon the ground that the payment thereof was a voluntary payment, and that, therefore, petitioner is not entitled to such refund. Notice of claim and written demand for the payment of said $248 were served upon the comptroller, and thirty days having elapsed and he having refused to make an adjustment or payment of the claim, the present proceeding was brought. The facts were not disputed, and the question is solely one of law. From the order granting a peremptory writ of mandamus the present appeal is taken.

Starting with the unquestioned proposition that a peremptory writ of mandamus may issue only where there is a clear legal right, we are not only unable to find any duty imposed upon the comptroller to make a refund of taxes paid under the facts in this case, but we can find no provision of law under which he would have the right to make such payment.

The respondent relies upon the provisions of section 897 of the Greater New York charter as supporting its contention. In this we think it is mistaken, nor can the section be given the claimed meaning without a distortion of its plain language.

Section 897 (as amd. by Laws of 1913, chap. 324) reads as follows: " The board of taxes and assessments is hereby invested with power to remit or reduce where lawful cause therefor is shown. It may remit or reduce if found excessive or erroneous a tax imposed upon real or personal property. It shall require a majority of the commissioners of taxes and assessments to remit or reduce the assessed valuation of personal property, and no tax on personal property shall be remitted, canceled or reduced, except to correct clerical errors, unless the person aggrieved shall satisfy the board of taxes and assessments that illness or absence from the city had prevented the filing of the complaint or making the application to the said board within the time allowed by law for the correction of taxes. Any remission or reduction of taxes upon the real estate of individuals or corporations must be made within one year after the delivery of the books to the receiver of taxes for the collection of such tax."

There is here no provision for any refund of taxes paid. The evident purpose was to provide for outstanding taxes, as to which the power was given in proper cases either to remit entirely the amount of the tax still outstanding, or to reduce the same.

But by chapter 592 of the Laws of 1915 the following sentence was added to the provision of section 897 just quoted: " After the expiration of one year from the delivery of the books to the receiver of taxes, the comptroller, with the written approval of the board of taxes and assessments, may correct any erroneous assessment, or tax due to a clerical error, or to an error of description of any parcel of real estate, contained in the annual record of assessed valuations of real estate, and, if the taxes computed on said erroneous assessment have been paid, the comptroller is authorized to refund the difference between the taxes computed on the erroneous and the corrected assessments."

It is sought to make this sentence relate back to the prior

provisions of the section, but it is obvious that it has no relation thereto, that it pertains to a different and distinct situation and has no relevancy to the facts now under consideration. The comptroller never acted under the power therein conferred upon him, nor has such power any application to the pending proceeding.

We have a case where the relator had a complete and effective remedy given it by the statute * to review the assessment by writ of certiorari, which it abandoned. There was outstanding a tax assessed upon its property of which the city had the right to enforce payment, and which was a valid, subsisting lien. The relator voluntarily paid this tax, and then applied for the remission or reduction of the assessment upon which it was based, concealing the fact that it had paid the entire tax. The tax board, the tax having been voluntarily paid in full, was without power to pass any resolution which would destroy the legal effect of such payment. No action taken by it could bind the city to a return of the excess payment, nor impose any duty upon the receiver of taxes or the comptroller to refund the amount thereof. The comptroller was neither bound nor authorized to make such payment, nor was the relator entitled thereto.

By its voluntary payment of the total amount of the tax and its abandonment of the certiorari proceeding to review the assessment, the relator was left without any legal right to the return of the overpayment made by it and any remedy it may pursue to secure the return of any overpayment made by it must be found in section 246 of the Greater New York charter (as added by Laws of 1907, chap. 601, and amd. by Laws of 1910, chap. 683).

The order appealed from will, therefore, be reversed, with ten dollars costs and disbursements, and the motion denied, with fifty dollars costs.

Clarke, P. J., Laughlin, Page and Merrell, JJ., concur.

Order reversed, with ten dollars costs and disbursements, and motion denied, with fifty dollars costs.

---

* See Greater N. Y. Charter, § 906, as amd. by Laws of 1911, chap. 455.— [Rep.